# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS

## VICTORIA DIVISION

Case No._____

| | |
|---|---|
| **JUAN CARLOS HERNANDEZ-CAMACHO,**<br>**JOSE ISABEL GUERRERO-ECHEVESTE, and**<br>**CARLOS ALFREDO GUERRERO-SANCHEZ** | § §<br>§<br>§<br>§<br>§<br>§ |
| **Plaintiffs,** | § §<br>§ |
| **v.** | § § |
| **SALEM OPERATING JV,**<br>**MARVIN FRANZ,**<br>**GALEN CONRAD FRANZ, and**<br>**BRENT L. ADKISSON** | §<br>§<br>§<br>§<br>§<br>§ |
| **Defendants.** | § |

## COMPLAINT

## PRELIMINARY STATEMENT

1.   Plaintiffs Juan Carlos Hernandez-Camacho, Jose Isabel Guerrero-Echeveste and Carlos Alfredo Guerrero-Sanchez (Farmworkers) are migrant agricultural workers who worked for Salem Operating JV (Salem Operating), a rice farming operation located in Victoria, Texas, from 2016 through 2019 pursuant to the federal government's H-2A Temporary Agricultural Worker program.

2.   Salem Operating JV is a joint venture owned by Marvin Franz, Galen Conrad Franz, and Brent L. Adkisson (together, Defendants).

3.      While employed with Salem Operating, the Farmworkers labored on the company's rice operation, including preparing land, planting, irrigating, harvesting, operating and maintaining agriculture machinery, mending fences, and other farm maintenance. The Farmworkers worked no less than 55 hours per week during the low seasons and worked anywhere between 75 and 98 hours per week during the high seasons.

4.      From the 2016 season through the 2019 season, no matter how many hours they worked, on the tenth of every month, Plaintiffs Juan Carlos Hernandez-Camacho and Jose Isabel Guerrero-Echeveste received paychecks for only $1,600.00 and Plaintiff Carlos Alfredo Guerrero-Sanchez received a paycheck for only $1,700.00. As a result, Defendants paid the Farmworkers wages well below the applicable Adverse Effect Wage Rates (AEWR), as guaranteed in their 2016, 2017, 2018 and 2019 employment contracts and at times below minimum wage as required by federal law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) (Fair Labor Standards Act (FLSA)), and 28 U.S.C. § 1331 (subject matter jurisdiction).

6.      This Court has supplemental jurisdiction over the Farmworkers' state law causes of action pursuant to 28 U.S.C. § 1367(a), including claims for breach of contract. These state law claims are so related to the federal claims that they form part of the same case or controversy.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1). Defendants Marvin Franz, Galen Conrad Franz, and Brent L. Adkisson are residents of Victoria, Victoria County,

Texas. Defendant Salem Operating maintains its principal place of business in Victoria, Victoria County, Texas.

## PARTIES

9.      Plaintiff Farmworkers are citizens of Mexico who were admitted to the United States on a temporary basis pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(a), to perform agricultural labor related to Defendants' rice operation. The Farmworkers received H-2A visas pursuant to this statutory provision and were lawfully employed by Defendants under these visas at all times relevant to this action.

10.     Plaintiff Farmworkers were "employee(s)" within the meaning of the FLSA, 29 U.S.C. § 203(3), and were "employee[s]" and "H-2A worker[s]" of Defendants within the meaning of 20 C.F.R. § 655.103(b).

11.     Defendant Salem Operating is a joint venture with its principal place of business in Victoria, Texas. At all times relevant to this action, Salem Operating was an employer of the Farmworkers within the meaning of the FLSA, 29 U.S.C. § 203(d), and the H-2A regulations, 20 C.F.R. § 655.103(b). Salem Operating hired the Farmworkers, directed and supervised their daily work activities, assigned them their tasks on a daily basis, and paid them their wages for their labor.

12.     Defendant Marvin Franz is a resident of Victoria, Texas. He is a co-partner of Salem Operating and throughout the period relevant to this action, at times directed and controlled Salem Operating's activities on a daily basis.

13.     Defendant Galen Conrad Franz is a resident of Victoria, Texas. He is a co-partner of Salem Operating and throughout the period relevant to this action, directed and controlled Salem Operating's activities on a daily basis.

14.     At all times relevant to this action, Marvin Franz and Galen Conrad Franz were employers of the Farmworkers within the meaning of the FLSA, 29 U.S.C. § 203(d), and the H-2A regulations, 20 C.F.R. § 655.103(b), because, *inter alia*, they determined what tasks the Farmworkers would perform each day, supervised the Farmworkers' performance of their assigned tasks, and paid the Farmworkers their wages for their labor.

15.     Defendant Brent L. Adkisson is a resident of Victoria, Texas. He is a co-partner and has an ownership interest in Salem Operating and throughout the period relevant to this action, directed and controlled Salem Operating's activities on a daily basis.

### FACTS

### The Federal H-2A Visa Program

16.     The H-2A program was created by the Immigration and Nationality Act, 8 U.S.C. § 1188, and is implemented through regulations set out at 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.47. The H-2A program authorizes the admission of non-immigrant workers to perform agricultural labor or services of a temporary nature.

17.     The H-2A program seeks to meet the legitimate temporary labor needs of employers while providing protections to U.S. and foreign workers. The two fundamental purposes behind the H-2A program are (1) that U.S. workers rather than nonimmigrant alien workers be employed wherever possible, and (2) that the employment of guest workers will not adversely affect the wages and working conditions of similarly employed U.S. workers. 20 C.F.R. § 655.100. The H-2A program is subject to detailed recruitment and other requirements to fulfill its purpose of ensuring that U.S. workers are protected when employers hire foreign workers for seasonal jobs.

18.     An agricultural employer in the United States may import aliens to perform labor of a temporary nature if the United States Department of Labor (DOL) certifies that (1) there are

insufficient available workers within the United States to perform the job, and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R. § 655.100. Aliens admitted in this fashion are commonly referred to as H-2A workers.

19.     Employers seeking the admission of H-2A workers must first file a temporary labor certification application with the DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. 20 C.F.R. § 655.121(a)(1). Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly situated U.S. workers. 20 C.F.R. §§ 655.120, 655.122 and 655.135. Among these terms are the following:

a.      For every hour or portion thereof worked during a pay period, the employer must pay the workers the highest of the adverse effect wage rate (AEWR), the prevailing wage for the work in the geographic area where the work is to be performed, the federal minimum wage, or the state minimum wage. 20 C.F.R. § 655.120. The AEWR for Texas work was $11.15 per hour in 2016, $11.59 per hour in 2017, $11.87 per hour in 2018 and $12.23 per hour in 2019.

b.      The employer must provide housing at no charge to the H-2A workers. All employer-provided housing must meet applicable federal standards. 20 C.F.R. § 655.122(d)(1) and 20 C.F.R. § 654.400(b).

c.      The employer must either furnish free and convenient cooking and kitchen facilities or must provide each worker with three meals per day. 20 C.F.R. § 655.122(g).

d.      For those workers who complete the first 50 percent of the work contract, the

employer must provide or pay for any transportation costs from the worker's home to the

employer's jobsite which have not previously been reimbursed, as well as daily subsistence

en route. 20 C.F.R. § 655.122(h)(1).

e.      For those workers who complete the contract period, the employer must provide or

pay for transportation from the worksite to the worker's homes, as well as pay for or

provide subsistence en route. 20 C.F.R. § 655.122(h)(2).

f.      The employer must keep accurate and adequate records with respect to the

workers' earnings, the daily starting and stopping times for work and deductions from

wages. 20 C.F.R. § 655.122(j).

g.      The employer must furnish each worker on payday a written statement of his hours

and earnings containing, *inter alia*, the hourly rate and the hours actually worked by the

employee during that pay period. 20 C.F.R. § 655.122(k)

20.     The clearance order described in paragraph 19 is the employment contract between the

agricultural employer and the H-2A workers. 20 C.F.R. § 655.122(q).

21.     In or about December 2015, Salem Operating submitted a temporary labor certification

application to the Office of Foreign Labor Certification of the DOL's Employment and Training

Administration (ETA) seeking admission of 12 workers to work in Victoria, Texas, to perform

various agricultural job duties in connection with the company's rice farming operation from

February 15, 2016 through December 15, 2016 (ETA case number H-300-15355-449841). The

temporary labor certification application was signed on behalf of Salem Operating by Marvin

Franz.

22.     The temporary labor certification described in paragraph 21 explicitly and implicitly incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B, including the terms described in paragraph 19.

23.     As part of the temporary labor certification application described in paragraph 21, Defendants submitted a clearance order, which contained certifications that the order described the actual terms and conditions of employment being offered, and contained all material terms of the job, as required by 20 C.F.R. § 653.501(c)(3)(viii). These certifications were signed on behalf of Salem Operating by Marvin Franz.

24.     A true and correct copy of the clearance order (ETA case number H-300-15355-449841) submitted by Defendants as part of its request for 12 workers for employment in Victoria, Texas, from February 15, 2016 through December 15, 2016 is attached as Exhibit A.

25.     The DOL accepted the temporary labor certification application and clearance order submitted on behalf of Salem Operating as described in paragraph 21 through paragraph 24. The clearance order was circulated to local job service offices in an effort to recruit U.S workers to fill the positions offered.

26.     On or about January 15, 2016, the DOL's National Processing Center granted in-full Salem Operating's temporary labor certification application seeking 12 workers for employment in Victoria, Texas, from February 15, 2016 through December 15, 2016. U.S. Citizenship and Immigration Services (USCIS) of the Department of Homeland Security (DHS) in turn authorized H-2A visas to fill the manpower needs described in the temporary labor certification application and accompanying clearance order.

27.     In or about December 2016, Salem Operating submitted a temporary labor certification application to the Office of Foreign Labor Certification of the DOL's ETA seeking admission of

12 workers to work in Victoria, Texas, to perform various agricultural job duties in connection with the company's rice farming operation from February 15, 2017 through December 15, 2017 (ETA case number H-300-16349-487385). The temporary labor certification application was signed on behalf of Salem Operating by Marvin Franz.

28.     The temporary labor certification described in paragraph 27 explicitly and implicitly incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B, including the terms described in paragraph 19.

29.     As part of the temporary labor certification application described in paragraph 27, Defendants submitted a clearance order, which contained certifications that the order described the actual terms and conditions of employment being offered, and contained all material terms of the job, as required by 20 C.F.R. § 653.501(c)(3)(viii). These certifications were signed on behalf of Salem Operating by Marvin Franz.

30.     A true and correct copy of the clearance order (ETA case number H-300-16349-487385) submitted by Defendants as part of its request for 12 workers for employment in Victoria, Texas, from February 15, 2017 through December 15, 2017 is attached as Exhibit B.

31.     The DOL accepted the temporary labor certification application and clearance order submitted on behalf of Salem Operating as described in paragraph 27 through paragraph 30. The clearance order was circulated to local job service offices in an effort to recruit U.S workers to fill the positions offered.

32.     On or about December 27, 2016, the DOL's National Processing Center granted in-full Salem Operating's temporary labor certification application seeking 12 workers for employment in Victoria, Texas, from February 15, 2017 through December 15, 2017. USCIS of the DHS in

turn authorized H-2A visas to fill the manpower needs described in the temporary labor certification application and accompanying clearance order.

33.     In or about December 2017, Salem Operating submitted a temporary labor certification application to the  Office of Foreign Labor Certification of the DOL's ETA seeking admission of 12 workers to work in Victoria, Texas, to perform various agricultural job duties in connection with the company's rice farming operation from February 15, 2018 through December 15, 2018 (ETA case number H-300-17340-039659). The temporary labor certification application was signed on behalf of Salem Operating by Marvin Franz.

34.     The temporary labor certification described in paragraph 33 explicitly and implicitly incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B, including the terms described in paragraph 19.

35.     As part of the temporary labor certification application described in paragraph 33, Defendants submitted a clearance order, which contained certifications that the order described the actual terms and conditions of employment being offered, and contained all material terms of the job, as required by 20 C.F.R. § 653.501(c)(3)(viii). These certifications were signed on behalf of Salem Operating by Marvin Franz.

36.     A true and correct copy of the clearance order (ETA case number H-300-17340-039659) submitted by Defendants as part of its request for 12 workers for employment in Victoria, Texas, from February 15, 2018 through December 15, 2018 is attached as Exhibit C.

37.     The DOL accepted the temporary labor certification application and clearance order submitted on behalf of Salem Operating as described in paragraph 33 through paragraph 36. The clearance order was circulated to local job service offices in an effort to recruit U.S workers to fill the positions offered.

38.     On or about January 8, 2018, the DOL's National Processing Center granted in-full Salem Operating's temporary labor certification application seeking 12 workers for employment in Victoria, Texas, from February 15, 2018 through December 15, 2018. USCIS of the DHS in turn authorized H-2A visas to fill the manpower needs described in the temporary labor certification application and accompanying clearance order.

39.     In or about December 2018, Salem Operating submitted a temporary labor certification application to the  Office of Foreign Labor Certification of the DOL's ETA seeking admission of 12 workers to work in Victoria, Texas, to perform various agricultural job duties in connection with the company's rice farming operation from February 15, 2019 through December 15, 2019 (ETA case number H-300-18338-973242). The temporary labor certification application was signed on behalf of Salem Operating by Marvin Franz.

40.     The temporary labor certification described in paragraph 39 explicitly and implicitly incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B, including the terms described in paragraph 19.

41.     As part of the temporary labor certification application described in paragraph 39, Defendants submitted a clearance order, which contained certifications that the order described the actual terms and conditions of employment being offered, and contained all material terms of the job, as required by 20 C.F.R. § 653.501(c)(3)(viii). These certifications were signed on behalf of Salem Operating by Marvin Franz.

42.     A true and correct copy of the clearance order (ETA case number H-300-18338-973242) submitted by Defendants as part of its request for 12 workers for employment in Victoria, Texas, from February 15, 2018 through December 15, 2018 is attached as Exhibit D.

43.     The DOL accepted the temporary labor certification application and clearance order submitted on behalf of Salem Operating as described in paragraph 39 through paragraph 42. The clearance order was circulated to local job service offices in an effort to recruit U.S workers to fill the positions offered.

44.     On or about January 16, 2019, the DOL's National Processing Center granted in-full Salem Operating's temporary labor certification application seeking 12 workers for employment in Victoria, Texas, from February 15, 2019 through December 15, 2019. USCIS of the DHS in turn authorized H-2A visas to fill the manpower needs described in the temporary labor certification application and accompanying clearance order.

**The Farmworkers' Employment with Defendants in Victoria, Texas**

45.     The Farmworkers were employed by the Defendants from 2016 through 2019 under the terms of the H-2A clearance orders, as described in paragraphs 23, 29, 35 and 41 and attached hereto as Exhibits A–D. Every clearance order from 2016 through 2019 states, and Salem Operating JV certified, that the Farmworkers were to be paid at least the applicable AEWR on a bi-weekly basis. The Farmworkers' claims alleged herein pertain to their employment during each of the 2016, 2017, 2018 and 2019 H-2A seasons, as proscribed by the DOL's certification of Defendants' labor certification application and period of employment outlined in paragraphs 26, 32, 38, and 44 respectively, and corresponding employment contracts ("relevant times of H-2A employment").

46.     While employed with Salem Operating during the relevant times of H-2A employment, the Farmworkers labored on the company's rice operation, including preparing land, planting, irrigating, harvesting, seed drying and cleaning, processing, bagging and shipping product, operating and maintaining agriculture machinery, mending fences, and other farm maintenance.

47.     While working for the Defendants during the relevant times of H-2A employment, Farmworkers were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

48.     While working for the Defendants during the relevant times of H-2A employment, Farmworkers engaged in the production of goods, including rice, within the meaning of the FLSA. The rice and other goods were distributed interstate.

49.     Prior to the relevant times of H-2A employment, it was customary for Salem Operating, through its company foreman, Anselmo Garcia, to call the Farmworkers while they were still at their residences, in Mexico, before the start of the season and ask if they needed a loan to cover inbound expenses of obtaining the job and arriving at Defendants' farm. If a Farmworker requested a loan, Anselmo Garcia, at the direction of Salem Operating, would wire the loan to the Farmworker while they were still in Mexico pre-season.

50.     These inbound expenses were in conjunction with obtaining an H-2A visa and entering the United States to come to work in Victoria, Texas for the Defendants. Specifically, expenses included transportation from the Farmworkers hometowns in Mexico to Monterrey, Mexico to obtain their H-2A visas, and from Monterrey to Defendants' jobsite, as well as daily subsistence.

51.     The Farmworkers requested pre-season loans for inbound expenses every year during the relevant times of H-2A employment. Every year the Farmworkers received pre-season loans from the Defendants while they were still in Mexico, which they used to pay for transportation to acquire their H-2A visas in Monterrey and for transportation and daily subsistence from Mexico to Salem Operating's jobsite in Victoria, Texas.

52.     During the relevant times of H-2A employment, Salem Operating gave the Farmworkers end of year bonuses minus the amount loaned to the Farmworkers pre-season for inbound expenses. The practice of deducting the loan amount from the Farmworkers' end of year bonuses ultimately

shifted the cost of inbound expenses to workers who completed the first 50 percent of the work contract, in violation of the employment contracts and 20 C.F.R. § 655.122(h)(1) and as described in paragraph 19.d.

53.     During the relevant times of H-2A employment, Defendants failed to maintain records with respect to the Farmworkers' earnings and failed to provide the Farmworkers with a written statement, on or before each payday, showing the hours actually worked by the worker, the worker's total earnings for the pay period, or any other information as required by 20 C.F.R. § 655.122(k).

54.     During the relevant times of H-2A employment, the Farmworkers worked no less than 55 hours per week. However, during the high seasons, the Farmworkers' hours increased to anywhere between 75 and 98 hours per week.

55.     During the relevant times of H-2A employment, for his work on the Defendants' rice farming operation, as described in paragraph 46, Juan Carlos Hernandez-Camacho received a paycheck for $1,600.00 per month, no matter how many hours he worked. Accordingly, his wages almost always totaled less than the AEWR, in violation of his employment contract and 20 C.F.R. § 655.122(l)(2), and at times his earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

56.     During the relevant times of H-2A employment, for his work on the Defendants' rice farming operation, as described in paragraph 46, Jose Isabel Guerrero-Echeveste received a paycheck for $1,600.00 per month, no matter how many hours he worked. Accordingly, his wages almost always totaled less than the AEWR, in violation of his employment contract and 20 C.F.R. § 655.122(l)(2), and at times his earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

57.    During the relevant times of H-2A employment, for his work on the Defendants' rice farming operation, as described in paragraph 46, Carlos Alfredo Guerrero-Sanchez received a paycheck for $1,700.00 per month, no matter how many hours he worked. Accordingly, his wages almost always totaled less than the AEWR, in violation of his employment contract and 20 C.F.R. § 655.122(l)(2), and at times his earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. § 206(a).

58.    The clearance orders that controlled during the relevant times of H-2A employment, attached hereto as Exhibits A–D, state that the Farmworkers were to be paid bi-weekly. However, the Defendants paid the Farmworkers on the tenth of every month (roughly every four weeks), in violation of their employment contracts.

59.    The minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), were enacted to ensure workers receive the minimum wage for every hour worked per workweek. The Defendants' practice of paying the Farmworkers on the tenth of every month, rather than bi-weekly as mandated by their contracts, violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), because Defendants failed to promptly pay the Farmworkers the minimum wage for every hour worked per workweek.

60.    As a result of Defendants' actions as described in paragraph 58, for at least two weeks out of the Farmworkers' monthly pay periods, Defendants failed to pay the Farmworkers for any hours worked and the Farmworkers were not compensated for these hours until the following pay period, in violation of both the employment contracts and the FLSA minimum wage provisions.

61.    During the relevant times of H-2A employment, Defendants were required to provide housing that met applicable federal standards at no charge to the Farmworkers, as described in

paragraph 19.b. Employer-provided housing must meet the full set of DOL Occupational Safety and Health Administration (OSHA) standards set forth at 29 C.F.R. § 1910.142.

62.     The controlling clearance orders for the 2016 through 2019 seasons, attached hereto as Exhibits A–D, each contain a description of the Defendants' housing accommodations as follows:

      a.      House 1:      3 bedrooms, 1 bath, kitchen, living and laundry facilities available. Total occupancy 6.

      b.      House 2:      3 bedrooms, 1 bath, kitchen, living and laundry facilities available. Total occupancy 6.

      c.      House 3:      2 bedrooms, 1 bath, kitchen, living and laundry facilities available. Total occupancy 4.

63.     During the relevant times of H-2A employment, the Farmworkers lived in House 3. The Farmworkers lived with one other H-2A worker; therefore, House 3 was at full occupancy. There were two Farmworkers assigned to each of the two bedrooms and all four Farmworkers shared the bath, kitchen, living and laundry facilities.

64.     The three housing structures that make up the Defendants' employer-provided housing are not all located on the same plot of land. House 3 is located approximately 19 miles from the Defendants' rice farming operation worksite at 3230 N. FM 444, Inez, Texas 77968. It takes approximately twenty minutes of driving time to get to the worksite from House 3.

65.     During the relevant times of H-2A employment, Defendants were required to either furnish free and convenient cooking and kitchen facilities or provide each worker with three meals per day, as described in paragraph 19.c. The controlling clearance orders for the 2016 through 2019 seasons, attached hereto as Exhibits A–D, each describe Defendants' housing accommodations as

including laundry facilities and free and convenient cooking and kitchen facilities so that workers could prepare their own meals.

66.     Despite these promises made by Defendants in the employment contracts regarding housing accommodations for workers and federal regulations requiring free and convenient cooking and kitchen facilities, 20 C.F.R. § 655.122(g), the Farmworkers had to purchase various items to launder their clothes and cook their own meals. The Farmworkers told Defendants that the items furnished by the employer—the washing machines, a refrigerator, and a stove—were broken. However, the Farmworkers eventually purchased replacement items when Defendants did not replace the items and, therefore, failed to provide functioning facilities and accommodations as promised in the employment contract.

67.     As a result of Defendants' actions as described in paragraph 66, during certain relevant times of employment, the employer-provided housing conditions failed to comply with the Farmworkers' employment contracts and/or federal regulations altogether.

68.     Further, as a result of Defendants' actions described in paragraph 66, Juan Carlos Hernandez-Camacho, Jose Isabel Guerrero-Echeveste and Carlos Alfredo Guerrero-Sanchez each incurred a $100.00 expense to purchase two washing machines so that they could launder their clothes on site as promised in the employment contracts. Jose Isabel Guerrero-Echeveste further purchased a used refrigerator for $120.00 and used stove for $100.00 so that the Farmworkers could cook their own meals on site, as promised in their employment contracts and as described in paragraph 19.b.

69.     The Farmworkers left the washing machines, used refrigerator, and used stove, as described in paragraphs 68, at the Defendants' employer-provided housing, as they were purchased exclusively out of necessity for and use during the relevant times of H-2A employment. These

items, which are required to be provided by 20 C.F.R. § 655.122(g) due to Defendants' business decision to participate in the H-2A program and were, therefore, for Defendants' benefit, are in the possession of Defendants. Despite Defendants' possession and use of these items purchased by the Farmworkers, and that the expenses were incurred for Defendants' benefit, Defendants failed to pay the Farmworkers for these expenses for items that were otherwise promised under their employment contracts.

70.     In addition to the items described in paragraph 68, the Farmworkers purchased window air conditioning units to cool the employer-provided housing accommodations from the Texas heat in the summer months during the relevant times of H-2A employment. Juan Carlos Hernandez-Camacho bought a window air conditioning unit for $120.00, Jose Isabel Guerrero-Echeveste purchased two units for $200.00, and Carlos Alfredo Guerrero-Sanchez purchased a unit for $140.00.

71.     The Farmworkers left these window air conditioning units, as described in paragraph 70, in the possession of Defendants, which Defendants presumably use for their benefit; specifically, to cool their employer-provided housing accommodations from the Texas heat during the summer months. Despite Defendants' possession and use of these window air conditioning units, Defendants failed to pay the Farmworkers for these expenses incurred.

72.     Under the OSHA standards for temporary labor camps, H-2A employer-provided housing sites must be maintained in a way to ensure that sites are adequately drained and the grounds and open areas surrounding the housing must be maintained in a clean and sanitary condition free from rubbish, debris, or refuse. 29 C.F.R. § 1910.142(a)(1), (a)(2). Defendants, through Anselmo Garcia, Salem Operating's company foreman, demanded that Jose Isabel Guerrero-Echeveste maintain the lawn outside of the employer-provided housing facilities at House 3, as described in paragraph

62.c. Jose Isabel Guerrero-Echeveste, at the direction of the foreman, mowed the lawn outside of the employer-provided housing on a weekly basis during the relevant times of H-2A employment.

73.     The area surrounding House 3 is approximately two acres in size and it took Jose Isabel Guerrero-Echeveste approximately two hours to complete the tasks required to maintain the area as ordered by Defendants. These tasks included preparing and checking the machines/tools, removing debris, using the weed eater, mowing the grass, and putting the machines away. Jose Isabel Guerrero-Echeveste was required to mow the lawn in front of House 3 in addition to his job duties as stated in the H-2A employment contracts. Defendants failed to compensate Jose Isabel Guerrero-Echeveste for hours worked maintaining the area surrounding employer-provided House 3.

74.     In order to maintain the area surrounding House 3, Jose Isabel Guerrero-Echeveste had to purchase a used weed eater ($30.00) and used riding lawn mower ($450.00). Jose Isabel Guerrero-Echeveste left the used weed eater and used riding lawn mower in the possession of Defendants, which Defendants presumably use for their benefit; specifically, to maintain the area outside the employer-provided housing accommodations. Despite Defendants' possession and use of the used weed eater and used riding lawn mower, Defendants failed to pay Jose Isabel Guerrero-Echeveste for these expenses he incurred.

75.     During the relevant times of H-2A employment, once or twice every month, Defendant Marvin Franz would order Jose Isabel Guerrero-Echeveste to report to Marvin Franz's personal residence to perform ad hoc job tasks outdoors including gardening and washing windows. Defendants failed to compensate Jose Isabel Guerrero-Echeveste for hours worked at Marvin Franz's home performing non-agricultural job duties.

76.     During the relevant times of H-2A employment, Defendants failed to reimburse Juan Carlos Hernandez-Camacho for the full amounts of the travel and subsistence expenses he incurred traveling from Victoria, Texas back to his home in Mexico for those seasons in which he completed the work contract period, as required by the employment contracts and 20 C.F.R. § 655.122(h)(2). Juan Carlos Hernandez-Camacho completed the 2016, 2017, and 2018 work contract periods.

77.     During the relevant times of H-2A employment, Defendants failed to reimburse Jose Isabel Guerrero-Echeveste for the full amounts of the travel and subsistence expenses he incurred traveling from Victoria, Texas back to his home in Mexico for those seasons in which he completed the work contract period, as required by the employment contracts and 20 C.F.R. § 655.122(h)(2). Jose Isabel Guerrero-Echeveste completed the 2016, 2017, 2018, and 2019 work contract periods.

78.     During the relevant times of H-2A employment, Defendants failed to reimburse Carlos Alfredo Guerrero-Sanchez for the full amounts of the travel and subsistence expenses he incurred traveling from Victoria, Texas back to his home in Mexico for those seasons in which he completed the work contract period, as required by the employment contracts and 20 C.F.R. § 655.122(h)(2). Carlos Alfredo Guerrero-Sanchez completed the 2016, 2017, 2018, and 2019 work contract periods.

## CLAIMS FOR RELIEF

### COUNT I
### (FAIR LABOR STANDARDS ACT)

79.     This Count sets forth a claim by the Farmworkers for Defendants' violations of the Fair Labor Standards Act.

80.     Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay the Farmworkers at least $7.25 for every compensable hour of labor performed in

each workweek during which they were employed from the 2016 season through the 2019 season.

81.     The violations of the minimum wage provisions of the FLSA as set out in paragraph 80 resulted in part from Defendants' failure to credit the Farmworkers with all compensable hours worked, as described in paragraphs 55 through 57.

82.     The violations of the minimum wage provisions of the FLSA as set out in paragraph 80 resulted in part from Defendants' failure to promptly or timely pay the Farmworkers the minimum wage for every hour worked per workweek, as described in paragraphs 58 through 60.

83.     The violations of the minimum wage provisions of the FLSA as set out in paragraph 80 resulted in part from the Defendants' practice of shifting its business expenses onto the Farmworkers by deducting expenses that primarily benefit or convenience the employer (de facto deductions against the workers' minimum wage), as described in paragraphs 68, 70 and 74.

84.     Under the FLSA, employers are required to compensate non-exempt employees for hours worked in excess of forty hours, at a rate not less than one and one-half times the regular rate at which the employee is employed. 29 U.S.C. § 207(a)(1).

85.     The work Jose Isabel Guerrero-Echeveste performed to carry out Defendants' orders to maintain the area surrounding the employer-provided housing, as described in paragraphs 72 and 73, and at Defendant Marvin Franz's personal residence, as described in paragraph 75, does not fall within the agriculture exemption to the FLSA overtime requirement, because the assigned tasks do not fall within FLSA's primary or secondary definition of "agriculture." Further, House 3 is located approximately 19 miles from Defendants' rice farming operation; therefore, the labor performed at House 3 was not "on a farm."

86.     Defendants violated the overtime requirements of the FLSA, 29 U.S.C. § 207(a)(1), by failing to pay Jose Isabel Guerrero-Echeveste a rate, not less than one and one-half times the regular rate, at which he was employed, for any workweek longer than forty hours, for weeks where he performed work that is not exempt, for each workweek during which he was employed from the 2016 season through the 2019 season.

87.     Defendants are long-time participants in the H-2A visa program and had knowledge of the various federal laws and regulations governing the minimum benefits, wages, and working conditions that they, as employers, were required to offer to the Farmworkers under federal law and the employment contracts as set out in paragraph 19.a. Despite this knowledge, Defendants voluntarily, deliberately, and intentionally failed to pay the Farmworkers at least $7.25 for every compensable hour of labor performed in each workweek during the relevant times of H-2A employment as set out in paragraph 80.

88.     During the relevant times of H-2A employment, the Farmworkers worked long hours and received wages less than what was promised in the employment contracts. Sophisticated H-2A program participants, Defendants showed reckless disregard for whether the wages they paid to the Farmworkers were in violation of the employment contracts or FLSA minimum wage provisions.

89.     As a consequence of Defendants' violations of the minimum wage provisions of the FLSA as set forth in this Count, each Farmworker is entitled to recover the amount of his unpaid minimum wages, an equal amount in liquidated damages, and costs of suit and reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**(BREACH OF CONTRACT)**

90.     This Count sets forth a claim for damages by the Farmworkers for Defendants' breach of their employment contracts with the Farmworkers, as embodied in the clearance orders described in paragraphs 23, 29, 35 and 41.

91.     The clearance orders, attached as Exhibits A–D, together with the minimum terms specified in 20 C.F.R. § 655.122 and 20 C.F.R. § 655.135, constituted valid employment contracts containing all material terms of the Farmworkers' employment for Defendants.

92.     Under the H-2A program, H-2A workers are authorized to perform temporary or seasonal agricultural labor or services; therefore, each clearance order for the relevant times of H-2A employment constituted a legally binding contract between the Defendants and each Farmworker for the 2016, 2017, 2018, and 2019 seasons.

93.     The Farmworkers performed all material contractual obligations of employment that they were called upon to perform under the terms of their employment contracts.

94.     During the relevant times of H-2A employment, Defendants breached their employment contracts with the Farmworkers by providing terms and conditions of employment that were materially different from those promised in the clearance order as described in paragraphs 23, 29, 35, and 41, including the following:

>    a.   Failing to pay the Farmworkers for the costs they incurred for inbound transportation between their homes in Mexico to the jobsite in Victoria, Texas and daily subsistence en route, as set out in paragraphs 49 through 52;

>    b.   Failing to pay the Farmworkers wages at least equal to the applicable AEWR for all compensable hours worked during the 2016 through 2019 H-2A seasons, as set out in paragraphs 55 through 57;

c.   Failing to keep and maintain accurate payroll records regarding the Farmworkers'

employment during the 2016 through 2019 H-2A seasons, as set out in paragraph 53;

d.   Failing to furnish the Farmworkers with functioning, free and convenient cooking

and kitchen facilities, as set out in paragraphs 65 and 66;

e.   The breach of the employment contracts as set out in paragraph 94.b resulted in

part from the Defendants' practice of shifting its business expenses onto the

Farmworkers by deducting expenses that primarily benefit or convenience the

employer (de facto deductions), as described in paragraphs 68, 70 and 74.

95.      Defendants' violations of their employment contract obligations as described in this

Count caused the Farmworkers substantial injuries, for which they seek damages to the fullest

extent allowable in law or in equity, and attorneys' fees, pursuant to Tex. Civ. Prac. & Rem.

Code Ann. § 38.001(8) (West).

## PRAYER FOR RELIEF

WHEREFORE, the Farmworkers request that this Court enter an order:

a.   Declaring that Defendants, by the acts and omissions described above, violated the

Farmworkers' rights under the minimum wage provisions of the FLSA at 29 U.S.C. § 206(a),

as set forth in Count I;

b.   Granting judgment in favor of the Farmworkers and against Defendants, jointly and

severally, on their FLSA minimum wage claims set forth in Count I and awarding each of the

Farmworkers his unpaid minimum wages and equal amount in liquidated damages, awarding

Jose Isabel Guerrero-Echeveste overtime-wages for non-exempt work performed in excess of

forty hours worked in a workweek, and attorney's fees and costs of court;

c.   Granting judgment in favor of the Farmworkers and against Defendants, jointly and

severally, on the breach of contract claims set forth in Count II, and awarding each

Farmworker his actual and compensatory damages, and attorneys' fees;

d.   Awarding the Farmworkers, the costs of this litigation;

e.   Awarding the Farmworkers pre- and post-judgment interest as allowed by law; and

f.   Granting such relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

The Farmworkers demand a trial by jury on each and every claim set forth herein.

Respectfully submitted,

**/s/ Kristen D. Adams**
Kristen D. Adams
Attorney-in-charge for Plaintiffs
Texas Bar Number 24116001
S.D. Tex. No. 3631234
Texas RioGrande Legal Aid, Inc.
1702 Convent Ave.
Laredo, Texas 78040-6703
Telephone: (956) 718-4610
Facsimile: (956) 727-8371
Email: kadams@trla.org

**/s/ Kathryn J. Youker**
Kathryn J. Youker
Co-counsel for Plaintiffs
Texas Bar Number 24014928
S.D. Tex. No. 33655
Texas RioGrande Legal Aid, Inc.
1206 E. Van Buren St.
Brownsville, Texas 78520-7058
Telephone: (956) 982-5542
Facsimile: (956) 541-1410
Email: kyouker@trla.org